IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANESTHESIA SERVICES & PRODUCTS, INC., | : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | |
| AUGUSTINE TEMPERATURE MANAGEMENT, LLC, et al., | : : | No. 11-3072 |
| Defendants. | : | |

**MEMORANDUM**

Schiller, J.                                                                                         October 15, 2012

Presently before the Court is Defendants' Petition for Attorneys' Fees and Costs. For the reasons that follow, Defendants' petition is granted. Specifically, Defendants are awarded $44,870.45 in fees and $4289.39 in costs.

I.   BACKGROUND

This petition for fees arises out of a breach of contract dispute between Anesthesia Services & Products, Inc. ("ASAP"), a distributor of medical devices and equipment, and Augustine Temperature Management, LLC and Hot Dog USA (collectively, "ATM"), manufacturers of medical devices. ASAP and ATM entered into a Distribution Agreement ("Agreement") on April 13, 2009, under which ASAP was to distribute warming blankets manufactured by ATM in designated territories. ASAP spent over $125,000 marketing the blankets, including hiring a new employee, but did not fulfill its obligations to sell a certain number of blankets under the Agreement's product quota. (Compl. ¶¶ 12-13.) ASAP then allegedly discovered that its sales employee was supplying information about potential sales directly to ATM and fired her on August 16, 2010. (*Id.* ¶¶ 11-16.)

On August 19, 2010, ATM attempted to terminate the Agreement based on ASAP's failure to achieve the agreed-upon products quota. (*Id.* Ex. B [Termination Letter].) On August 31, 2010, ASAP responded, stating that the attempted termination did not comply with the terms of the Agreement and so was ineffective, and additionally claiming that ATM had violated the Agreement through its relationship with ASAP's sales employee. (*Id.* Ex. C [Aug. 31, 2010 Letter].)

On September 28, 2010, ATM brought an arbitration action against ASAP alleging breach of contract; ASAP counterclaimed for breach of contract. (*Id.* Ex. D [Demand for Arb.].) However, as of March 31, 2011, ATM had voluntarily discontinued the arbitration to avoid paying arbitration fees, allowing ASAP to pursue its claim in federal court. (*Id.* Ex. F [Mar. 31, 2011 Email].)

ASAP filed a Complaint against ATM for breach of contract on May 10, 2011, alleging that ATM had wrongfully worked with ASAP's employee and terminated the Agreement. (*Id.* ¶ 21.) ATM counterclaimed for breach of contract and conversion. (Defs.' Joint Answer, Affirmative Defenses and Countercls. at 8-9.) It alleged that ASAP breached the Agreement by failing to meet the products quota, make timely payments for ATM products, or return products in ASAP's possession to ATM. (*Id.* at 6-8.) ATM alleged in its conversion claim that ASAP sold to customers demonstration units provided to ASAP for temporary use without charge. (*Id.*) A jury ultimately found for ATM on both ASAP's claim and ATM's counterclaims, and awarded ATM a total of $18,619.99 on its counterclaims.

Throughout the litigation, ATM was represented by its General Counsel, J. Randall Benham, as well as Andrew S. Gallinaro, a seventh-year associate at Conrad O'Brien, as local counsel. (Decl. J. Randall Benham ¶¶ 2, 6.) On June 13, 2012, ATM filed a petition for attorneys' fees seeking a total of $136,322.39 in fees and costs. (Pet. of Defs. for Att'ys' Fees and Costs at 8.) ASAP filed a

2

response on June 27, 2012, in which it argued that ATM should not recover for the work done by either Benham or Gallinaro. (Pl.'s Answer to Pet. of Defs. for Att'ys' Fees and Costs.)

## II.  DISCUSSION

While each party to a litigation must generally bear its own attorneys' fees, parties may contract to permit recovery of fees. *See Kallok v. Medtronic, Inc.*, 573 N.W.2d 356, 363 (Minn. 1998). The Agreement provides, "The prevailing party shall be entitled to collect from the losing party reasonable costs and expenses (including, but not limited to, its court costs, litigation expenses, attorneys' fees and costs of collection of payments due hereunder) in connection with enforcing its rights under this Agreement." (Pet. of Defs. for Att'ys' Fees and Costs Ex. A [Distribution Agreement] ¶ 18.3.) ASAP admits that ATM is the "prevailing party" within the meaning of the Agreement. (Pl.'s Answer to Pet. of Defs. for Att'ys' Fees and Costs ¶ 8.) The parties further agree that Minnesota law governs the Agreement. (Distribution Agreement ¶ 17.211; Pet. of Defs. for Att'ys' Fees and Costs ¶ 8 n.1; Pl.'s Answer to Pet. of Defs. for Att'ys' Fees and Costs ¶ 8.)

ATM seeks $113,975 in fees for the work done on this case by Benham and $3485.01 in costs. (Pet. of Defs. for Att'ys' Fees and Costs ¶¶ 23, 28.) ATM also requests $20,948.50 in attorneys' fees for Gallinaro's time,[1] as well as $804.38 in costs. (*Id.* ¶¶ 26-27; Reply Mem. in Further Supp. of Pet. for Att'ys' Fees and Costs at 7.) ASAP counters that ATM should recover nothing for the work done by Benham because he was ATM's in-house counsel. ASAP also challenges the validity of Benham's billing record because it was not created contemporaneously

---

[1] This figure encompasses both the $18,058 ATM requested in its initial petition and the additional $2890.50 requested in its Reply Memorandum for the time spent by Gallinaro preparing that document.

3

with the work he did. ASAP further argues that, at a minimum, it should not have to pay for the 55.5 hours spent by Benham pursuing the arbitration that ATM later abandoned. ASAP additionally rejects payment of Gallinaro's fees because it cannot verify whether Gallinaro's work was duplicative of Benham's, given the deficiency in Benham's billing record; ASAP also objects to Gallinaro's billing rate.

      A.      **Attorneys' Fees for Benham**

             1.      *Availability of fees for in-house counsel under the contract*

ASAP's contention that ATM cannot recover fees for the work of its in-house counsel relies on *State ex rel. Head v. Savage*, a Minnesota Supreme Court case interpreting a state statute that provides for the recovery of "reasonable costs and expenses including fees of counsel" incurred contesting an eminent domain action. 255 N.W.2d 32, 37 (Minn. 1977) (quoting Minn. Stat. § 117.16 (1969)). The court disallowed recovery for the time spent by a landowner's in-house counsel on the case because the party "did not incur any out-of-pocket expense beyond its lawyer's regularly paid salary." *Id.* at 39. The court based its denial of fees for in-house counsel on its holding that "the 'reasonable costs and expenses including fees of counsel' recoverable under Minn. Stat. § 117.16, include actual cash outlays for costs and expenses incurred by reason of the condemnation proceeding and the taking of the property." *Id.* at 38.

ASAP argues that under *Savage*, "costs and expenses" include only out-of-pocket expenditures, and that this interpretation must apply to the instant agreement, which similarly provides for recovery of "costs and expenses (including . . . attorneys' fees)." Yet the Minnesota Supreme Court's interpretation of a state statute governing attorneys' fees for eminent domain actions does not control the meaning of a contractual agreement to award attorneys' fees. In fact, by

4

stating that the "'reasonable costs and expenses including fees of counsel' recoverable *under Minn. Stat. § 117.16*, include actual cash outlays," the court made explicit that its interpretation of this phrase applied only to the eminent domain statute directly implicated by the case. *See id.* at 38 (emphasis added). The court gave no indication that its ruling applied to, or even considered, the meaning of "costs and expenses" in the context of a contract that allowed for recovery of attorneys' fees.

Moreover, soon after *Savage*, the same court decided *City of Minnetonka v. Carlson*, which cautioned that "the general statements made [in *Savage*] concerning out-of-pocket expenses must be read with reference to the court's specific holding." 265 N.W.2d 205, 207 (Minn. 1978). The court in *Carlson*, also interpreting the statute at issue in *Savage*, reversed a denial of attorneys' fees for a landowner who had hired counsel on a contingency basis. Although hiring counsel by means of a contingency arrangement involves no direct expenditure—as *Savage* appeared to require—the court rejected the notion that "costs and expenses" under the statute included only out-of-pocket legal expenses. *See id.*; *see also In re Great N. Iron Ore Props.*, 311 N.W.2d 488, 492 (Minn. 1981) ("That the appellants [in *Carlson*] had no out-of-pocket legal expenses did not preclude them from recovering attorney fees pursuant to the statute permitting such recovery . . . ."). Thus, *Savage*'s holding is limited to the eminent domain context and does not confine recovery of "costs and expenses" to only direct expenditures even within the eminent domain context, as *Carlson* later demonstrated.

       2.     *Adequacy of Benham's billing records*

ASAP next argues that ATM can recover nothing for Benham's efforts in this litigation because the billing record he submitted is inadmissible hearsay. ASAP specifically contends that it

is inadmissible because Benham's billing record was not contemporaneously recorded and instead was prepared after trial for the purpose of this fee petition. The Third Circuit has determined that "[a]lthough mere estimates of time are not acceptable, an allowance of attorneys' fees may be based on a reconstruction, provided that the time records are substantially reconstructed and are reasonably accurate." *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 109 (3d Cir. 1976) (internal quotation marks omitted); *see also Amico v. New Castle Cnty.*, 654 F. Supp. 982, 999 (D. Del. 1987) (awarding attorneys' fees where "no contemporaneous time records were maintained," but where attorney submitted "reconstructed estimates" of time spent on "particular events").

With its petition, ATM filed Benham's billing record, which describes the work Benham did and the number of hours he spent on these tasks, divided into periods of two to three months. (Pet. of Defs. for Att'ys' Fees and Costs Ex. D [Benham's Billing Record].) ATM additionally submitted a declaration under oath by Benham, in which he states that he "prepared the hourly description of [his] work . . . based on [his] notes taken throughout the course of [his] representation contemporaneously with the work performed." (Decl. J. Randall Benham ¶ 9.) He further asserts that he "made a good faith effort to track [his] time as accurately as possible in preparation for any potential application for fees" and that the record is "accurate to the best of [his] knowledge, information and ability." (*Id.* ¶¶ 8, 9.)

Benham's submission qualifies as an admissible "reconstructed estimate" under *Lindy*; Benham has offered an hourly breakdown of the time he spent on each series of tasks he completed for this matter. Although Benham supplies only the period of months in which he performed his work and not the specific dates, the Court is satisfied with the specificity with which Benham

describes the work he did. He has thus "substantially reconstructed" his time with reference to specific events, and he has attested to his good faith effort to record his hours as accurately as possible.

### 3. *Inclusion of 55.5 hours of work on arbitration*

ASAP contests the inclusion of 55.5 hours of Benham's work that was performed for the arbitration that ATM brought—and then dropped—arising out of the same claims as those at issue in this litigation. Specifically, ASAP relies on the fact that the Agreement provided for attorneys' fees only for the prevailing party and argues that ATM could not have been the prevailing party in a proceeding that it declined to pursue.

This logic does not persuade the Court. While ASAP is correct that there was no prevailing party in the discontinued arbitration, ATM is the uncontested prevailing party in the litigation before this Court. Benham's preparation for the arbitration was "work that [he] would have undertaken in this litigation regardless," including relevant research, discovery requests, and production of documents. (Decl. J. Randall Benham ¶ 4.) As the prevailing party, ATM is contractually entitled to recover "attorneys' fees . . . in connection with enforcing its rights under this Agreement." (Distribution Agreement ¶ 18.3.) Since Benham's work on the arbitration was also necessary to the matter before this Court, the fees for the 55.5 hours on the arbitration were spent "in connection with enforcing [ATM's] rights," and ATM is entitled to recover them under the Agreement.

### 4. *Appropriate billing rate for Benham*

ATM seeks attorneys' fees for Benham at an hourly rate of $470, which it selected as "consistent with average partner rates in the Philadelphia marketplace," based on Benham's previous experience as a partner at a law firm. (Pet. of Defs. for Att'ys' Fees and Costs ¶¶ 15-16.) By this

measure, ATM requests $113,975 in fees for Benham. (*Id.* ¶ 23.) ATM alternatively suggests another methodology based on *Great Northern Iron Ore*, whereby the Court would divide Benham's total annual compensation by the number of hours he works per year to obtain his hourly rate. This rate is then multiplied by the number of hours Benham spent on this matter. (Reply Mem. in Further Supp. of Pet. for Att'ys' Fees and Costs at 4-5.) In calculating Benham's yearly salary, ATM includes the four percent equity stake that Benham has accumulated over the last five years, assigns a value to Benham's stake, and distributes the value of his stake over the five-year period of Benham's employment with ATM. ATM concludes based on this measure that Benham's hourly rate was $496 and that ATM is entitled to $120,280 for Benham's time. (*Id.* at 5.)

ATM is entitled to "no more than the amount reasonably allocable to the employment of house counsel during this litigation." *Great N. Iron Ore*, 311 N.W.2d at 494. ATM's suggestion of an hourly rate of $470 bears no relation to its actual litigation costs, and ATM is "not entitled to a windfall profit by charging ASAP for hourly attorneys' rates when it presumably obtained the services of in-house counsel at greatly reduced costs." (Pl.'s Answer to Pet. of Defs. for Att'ys' Fees and Costs ¶ 14.) ATM should, however, be reimbursed for the time that Benham spent defending ASAP's suit, since Benham could not dedicate this time to other matters.

Benham works 1128 hours per year, for which he is paid a salary of $160,000 and receives equity participation. (Decl. J. Randall Benham ¶¶ 10-11.) However, Benham's fees will not include any equity distributions made by ATM to Benham. ATM supplied no precedent for calculating attorneys' fees to include equity distributions. Furthermore, Benham's equity participation cannot be apportioned in a way that identifies that which is "reasonably allocable" to Benham's work on the instant matter. Benham explains only that he has "accrued a 4% equity stake over the previous

five years" and provides no further detail regarding the timing or amounts of his compensation in stock. (*Id.* ¶¶ 11-12.) As such, there is no basis to tie any portion of the stake Benham has accumulated over a five-year period to the particular work he did on this case.

Based on Benham's yearly salary of $160,000 and the number of hours he works per year, Benham's hourly rate is $141.84; Benham spent 242.5 hours on this case, and so ATM will recover $34,396.20 for Benham's time. The Court also awards the reasonable costs expended by ATM in the amount of $3485.01.

### B.   Attorneys' Fees for Gallinaro

Having reviewed Gallinaro's work and time records, the Court finds that Gallinaro's billing rate of $235—already discounted from his normal rate of $270—is appropriate. The discounted rate is well within the range set forth in the Community Legal Services, Inc. schedule of hourly rates for attorneys with six to ten years of experience. (*See* Pet. of Defs. for Att'ys' Fees and Costs Ex. C [Community Legal Services Fee Schedule]); *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) ("The fee schedule established by Community Legal Services, Inc. . . . 'has been found by [the Eastern District of Pennsylvania] to be a fair reflection of the prevailing market rates in Philadelphia.'" (quoting *Rainey v. Phila. Hous. Auth.*, 832 F. Supp. 127, 129 (E.D. Pa. 1993)) (alteration in original)). However, in light of the substantial fees requested by ATM relative to the amounts at issue here, the Court finds that certain of the work done by Benham and Gallinaro was duplicative, including, for example, the 15.5 hours Gallinaro billed for preparing for and participating in the trial, even though Gallinaro examined no witnesses. (Pet. of Defs. for Att'ys' Fees and Costs Ex. E [Gallinaro Billing Records].) The Court will thus reduce by half the fees requested for Gallinaro's time and award ATM $10,474.25. Gallinaro's reasonable costs of $804.38

will be recovered in full by ATM.

### III. CONCLUSION

For the foregoing reasons, the Court awards ATM a total of $44,870.45 in fees and $4289.39 in costs. An Order consistent with this Memorandum will be docketed separately.